Mr. Fox, we're going to let them get settled, aren't we? May it please the Court, my name is Robert Fox for Appellant Carpenter Technology Corporation. I'd like to reserve three minutes for rebuttal. This case involves the disposal of millions of gallons of waste at the Boar Head Farm Superfund site over at least six years by over at least 22 parties. Despite the involvement of all those parties and the disposal of all that waste, the District Court allocated to one party, Carpenter, 80%. You know, we really do read the briefs, Mr. Fox. Let me ask you a question. What did AJAIR do? I'm trying to, it's not so clear to me, was, it's the lead party, but did it deposit waste to? The stipulations in the list. They participated by reimbursing the parties who entered the consent decree to do the work. Yeah, but why? Why did they? I don't know why. They ended up. I can't figure out where it stands in this. I don't know why they did that. They were ultimately stipulated and then found to have 0% of waste to the site. Okay. All right. In other words, it doesn't matter. It doesn't matter to the argument. They are a PRP. They were a PRP. They participated. Ultimately, it was stipulated that they send zero volume of waste to the site. Okay. Now, Judge Davis wrote this really very meticulous, long opinion. I read meticulous. What part of it do you think was error? Okay. I'm going to start with what I consider to be the most primary error, and that is his finding that the parties who entered into the consent decrees with the United States had a 107 action for cost recovery under Superfund. They do not. They have a 113 action. Why? What is it about the precedent, particularly in light of what Atlantic Research says in that footnote number six, that makes you think it's not quite possible that they had both a 107A and a 113F claim? It's very clear in Atlantic Research that they did not reach that issue, and they did not reach that issue because the facts of that case were such that the party did not enter into a consent decree. Well, I know they didn't reach it. I mean, that's the whole point of footnote six. It says we don't reach it, but it says what it says, and it certainly seems to imply that there's a third thing out there, a tertium quid, if you will, that there's a we've got the cases that are clearly 113Fs, and we've got the cases that are clearly 107As, and then they say in that footnote, and we're not saying there's not an overlap. There sure could be. Consent decrees might be one of those places. I mean, and now we're right in that zone. Why shouldn't we be looking at that footnote six and saying, well, this is what the Supreme Court was hinting pretty strongly is the territory where there could be both? Because they established a bright line test in Atlantic Research, and the bright line test is that a party who was sued by the United States under 106 or 107 and enters into a The question is only, isn't it? Yeah. Yeah. Why don't you take me into Atlantic Research and show me where it says they've got only? Because that would make footnote six an absurdity, wouldn't it? Well, they tried to distinguish between what is appropriate for a 113 case and what is appropriate for a 107 case, and what they said clearly in that case on the facts of that case is if you're sued, you have a 113 case. If you're not sued, and you incur the cost yourself, you have a 107 case. And Judge Slocater's opinion for this court in DuPont says the exact same thing. It says a party who is sued under 106 or 107 does not have a 107 case. That's exactly what happened here. These parties were sued, and the reason that makes sense, and this is, I think, what you're getting at, the reason that makes sense is the following. I'm not getting at anything. I'm trying to get you to get to something, which is why you read the word only into Atlantic Research when the court seems to be doing exactly the opposite and saying if you're under a consent decree, we really can't say it's voluntary. So maybe you're in, and you're not incurring your own cost, so maybe you're in this in-between spot. And the reason for that is because if you allow that party who was sued by the United States and entered to a consent decree to have a 107 claim, it would be inconsistent with the entire structure of the statute. I'll give you two examples of that. The first example is exactly this case. A party who enters into a consent decree after being sued under the statute, section 113 F2, is entitled to contribution protection. That means that they cannot, as a matter of statute, be sued by any other party for contribution. So these plaintiffs in this case, if they had a 107 action, would then sue other parties, assert joint and several liability against those parties. Those parties, by statute, would be barred from bringing a contribution counterclaim, and those parties then would be able to recover 100 percent of their own costs against the other parties, regardless of how liable they are. The statute is meant to make the polluter pay. Isn't the driver here the concern that if it's a 107 claim, there is a joint and several liability that Carpenter could be exposed to? The driver is that a party who settles, if they have a 107 claim, in any case, they can assert joint and several liability against any defendant. And they themselves then would not be subject to equitable allocation. They would have no liability because they would be able to assert joint and several liability against the other parties. And the goal of Superfund... Does Burlington Northern indicate that even with a 107 claim, you could do an apportionment? Burlington Northern presupposes that there's joint and several liability. Not... All they say is apportionment, which is not an equitable allocation. Apportionment is the burden of the defendant, and the defendant has to show that the harm was divisible. That's what Burlington Northern deals with, not allocation. This claim is a claim among jointly and several liable parties. And under the statute, the clear language of the statute, that requires an equitable allocation. The result that the district court ended up with in this case would mean that there would be no equitable allocation among jointly and several liable parties. That the plaintiffs who entered into a consent decree after being sued would have a 107 joint and several liability claim against all parties. Well, let me... Let me ask you this. Looking at what Judge Davis actually did... The recent Supreme Court authority and saying, could be 107A, could be 113F. And then if you kind of read the tea leaves, everybody seems to be agreeing that maybe he was proceeding under 113F. Maybe I'm reading your briefing wrong, but if he really did leave it up in the air and said 107A, 113F, I'm going to... I've decided to divide up things in the way I'm going to divide it up. Could he have done that properly under the law of either 107A in light of Burlington Northern or under 113F? No. Could he do it under either statute? No. I believe that under Atlantic Research and this circuit's opinion in DuPont, that a party who is sued by the United States has only a 113F claim. They do not have a choice between the two because to do so... I'm not making my question clear and I apologize, it was probably not clear. Whether he was right or wrong on that point, if he thought to himself, man, 107A, 113F, I could go under either. Leave aside your argument for a moment. If he did go under either, was he correct if I'm reading him right and thinking, you know, I can divide this up. Even under 107A, I can divide this liability up. No, that would be incorrect. If it's a 107 action... That's the actual question. Why could he not do that? Because under 107, there's joint and several liability. Does that mean there can be no equitable decision about how to divvy things up? Exactly. It's either, it's got to be, it's all or nothing? Exactly. Because by operation of statute under 113F, those parties are entitled to contribution protection. We would not have a contribution counterclaim against them. There would be no equitable allocation at all. And the importance of that is, and this is why people have been fighting for 15 years under over 107 versus 113, is who has the burden of proof. And under a 113 claim, the plaintiffs have the burden of proof. And they did not meet their burden of proof of establishing the volume of all parties in this case. Mr. Fox, what's the meaning of this language from the Supreme Court's opinion this year in Burlington Northern, where it says, quoting the seminal case of Chemdine, that the act imposed strict liability. It did not mandate joint and several liability in every case. Rather, Congress intended the scope of liability to be determined from traditional evolving principles of common law. Going down a little further, following Chemdine, courts of appeals have acknowledged that the restatement second of torts. And then it goes on to talk about not all harms are capable of apportionment. Some maybe aren't. Is that not talking about apportionment under 107A? I think there's a distinction between apportionment and allocation. In the end, whether you call it apportionment or you call it allocation, it means you're cutting up the liability in slices and giving those different slices to different parties, right? I would say no. Apportionment is very specific. Apportionment means that you, as the defendant in the case, have to determine that the harm was divisible, meaning that it was reasonably capable of apportionment. Equitable allocation is an entirely different animal. You're assuming that all parties are liable for one indivisible harm, and then you're using equitable factors to decide how they pay for that. That is very different as a matter of law and has always been different under Superfund. However the tools operate, at the end of the day, if you call it allocation or you call it apportionment, if the judge moves forward and says, I'm dividing this harm up, at the end of the day, you've got different parties holding different slices of the cost, right? Only if the defendant in a 107 action has met its burden of proof that the harm was apportionable, not allocable, apportionable. And that's the key issue in this case because in a 113 claim, the burden of proof on allocation is on the plaintiffs. They did not meet that burden of proof, and that's why judgment should be... What do you want us to do in this case on this appeal? What do you think we should do? I believe that the plaintiffs did not meet their burden of proof, and so the judgment should be reversed and it should be entered in favor of Carpenter. You don't think there's any further hearings needed? Absolutely not. The plaintiffs concede, and the court found, that the key equitable factor in this case was the volume of the parties at this site. And the plaintiffs simply did not put on any admissible evidence in this case as to the volume of three of the plaintiffs. Well, they had the truck driver's testimony, didn't they? Not with respect to plaintiffs. With plaintiffs, they only had one document, which was a stipulation. It was a stipulation that was entered into between the plaintiffs and another defendant, not Carpenter. And I call your attention to the colloquy between the court and the parties with regard to that stipulation, which is at the appendix 1197 to 99. And in that colloquy, counsel for plaintiffs said, Your Honor, we're not asking defendant Carpenter to stipulate to any of these facts. That's the only evidence that was proffered as to the volume of plaintiffs. So under your- If you don't have the plaintiff's volume- I'm sorry. You don't know the total volume at the site. If you don't know the total volume at the site, you can't allocate between all the parties. So under your position, all the people who settled with the plaintiffs didn't have to because they weren't really- Well, they all settled before trial except for one defendant. They settled before- And then that defendant settled afterwards. That's correct. But they're all out. They're all out. There were 23, and now there's Carpenter. But you're saying that they had no liability. They weren't responsible. I believe the plaintiffs had evidence because they identified it in their pre-trial memorandum to put on about the plaintiffs, but they chose not to do so. I don't know why they chose not to do so. Sorry about that. I'm sorry? Okay. The plaintiffs. They had- three of the plaintiffs never offered any evidence of their own volume at the site, and that's a critical factor. How much is involved in this case? Lots. A lot. Well over $25 million. There's always big money in these. And the reality is that the district court decided that- not to put too fine a point on it- that your client was a bad actor. In addition to volume, but there was knowing and repeated use of a polluter, and there was real serious significant culpability which- And non-cooperation. And non-cooperation. Which was the other 7.2%. So at the end of the day, though, your view is because of your assertion that there's a failure of proof, Carpenter gets a walk. That's correct. They did not- they did not meet their burden of proof. Assuming that 113 is the proper action, which it is in this case, they have the burden of proof. Therefore, we have to accept that 107 isn't. That's correct. We have to accept your position that they are not- that they are- you can't have both. That's correct. What's the consequence if there is a 107 action? On that particular claim, then the burden of proof would be on the defendant in their contribution. However, we can't have a contribution counterclaim against them here. It's barred by the statute. We wouldn't be able to put on evidence of our contribution counterclaim against them. It's barred by the statute. Section 113F2 says specifically, and it's incorporated into both of the consent decrees, if a party settles with the United States in a consent decree, they are not- they shall not be subject to any claims for contribution. But you didn't make a contribution. Excuse me? Carpenter didn't make a contribution. Yes, we made a contribution counterclaim. No, no. You may have made a- yeah. Well, what was your contribution? How much was your contribution? In terms of? Money. I think- Oh, no. I'm talking about a contribution counterclaim. A claim under 113 for contribution. Oh, all right. Okay. Thank you. Did you- you reserved? Three minutes. Okay. Mr. Harris? May it please the Court. My name's Glenn Harris. I'm counsel for the Appellees. Let me address the two points that were just raised. Mr. Fox was wrong on both points. Let's start with the stipulation. Speak up, Mr. Harris. Oh, sorry. Yes. Let's start with the stipulation. Let's start with the stipulation. There were two stipulations. Stipulation one- number one was made during trial between plaintiffs and Haney and Harmon, the other defendant. That stipulation specifically said, here's the- here's the volume of waste from Haney and Harmon that was delivered to the site. And here's the volume of waste from three of the plaintiffs that was handled by Manfred Druhl's company, Druhl Chemical Company. Right. And there's no dispute that Carpenter was not a party to that, right? Initially. That's correct. They were not a party to that stipulation, and when it was offered- Your whole argument- your whole argument for pinning them with your stipulation is that that stipulation got mentioned in a later stipulation, right? It got more than mentioned, but I don't need to make the whole argument, though. That stipulation was properly admitted into evidence. They weren't bound to the stipulation before they agreed to the second stipulation, and let me come back to that in a second. But the stipulation is admitted into evidence as proof against my client of the three entities' volumes. They could have disputed it, but it's not that there's no evidence. He's saying I offered no evidence. That's just not true. That first stipulation came into evidence. It was binding against me, and it was properly considered by the court, even if there'd been no second stipulation. It doesn't mean the evidence goes away. I put it on. Your argument is this was, in effect, an admission. Exactly. An admission which was wildly in our favor, if you think about it from their perspective. Nevertheless, an admission that we have this much liability, X liability. That's exactly correct. We admitted, and we stipulated with Haney that those are the volumes for those three companies. They agreed to it. They didn't agree to it initially. They didn't have to, but it was in evidence. The judge used it. I mean, he counted it. Look at their opinion. He counts those volumes against me. They could have put on evidence that they wanted to prove it was some different number, and they chose not to. So it's just not correct to say there's zero evidence. Well, let me ask this. If you have the burden of proof, which you did, right? Well, that's a different question. I have to prove that I paid more than my fair share. Right. So if it's your burden to prove what your fair share is, it's also your burden to prove what the size of the pie is that's being cut up into shares. Right. Yes. OK. And if I understand your argument correctly, you're saying that your proof in this instance is an Ipsy Dixit. You can come in and say, my proof of what the size of the pie is, I'd say it's this much. I'm done. And that that's proof sufficient to carry your burden. Is that right? Not exactly. We'll make it exact. Here's the part that's not exact. I don't agree that I have to put in evidence as to my own share. My share could be zero. I mean, we don't have to reach that in this case. No, you would have to say that, wouldn't you? I mean, I'm having a hard time understanding that position. In order for Judge Davis's approach to work, his approach was a percentage of the whole. Yes. You've got to prove the whole in order to prove a percentage of the whole, don't you? But what if my share is zero? Well, then you would say, my share is zero. And then that would be a statement that would prove what the whole was. I mean, the problem is not that you said zero or that you had proof of some other number. From their perspective, the problem is there's no creditable proof that would allow one to make a conclusion about the whole. At least if you'd come in and said, it's zero, and you had proof that it was zero, then they would say, OK, well, then that's proof of what the whole is. I guess my point is it's an adversarial process. So to say, before there's any proof, then my share is zero. Why do I have to prove the case against myself just because you call it a contribution case? The fact is, my waste didn't go to the site until the judge decides at trial that my waste went to the site. So I didn't have to put on proof. Again, we didn't get to this point because I went ahead and put on some proof by the form of the stipulation. But my point is, I don't think I really had to do that. It doesn't strike you. I'm sorry. Remember, the share from my other two clients, as Judge Sloboda points out, is zero. TI and Aguirre ended up with a zero share that they did stipulate to, by the way. At bottom, your position is, and I guess has to be on this record, that even if Carpenter isn't bound by your stipulation, it was proof sufficient to carry your burden of proof about what the overall volume was. That is exactly correct. How do you get to the overall volume by saying, this is the percentage of these three? Where is the proof of the totality? Okay. Well, let me start by saying— Unless it's the driver's statements. Well, it's all of this stuff. See, there were all kinds of evidence that came into this case from which the judge spent 75 pages sifting through the evidence and deciding what really happened. But most of this case was stipulations. So let me come back— Let's come to the second stipulation. Yeah, I've got to talk about the second stipulation. Yeah, I hope so. Here's what happened at trial, okay? The first stipulation went in on the first day of trial, and Carpenter chose not to agree with it. In fact, I don't remember if we asked him to agree with it, but it went into evidence. Then, the second to the last day of trial, they had a witness to call. And this is reflected in the transcript. They had Mr. Hochreiter, who was an expert witness. His report was in part testimony concerning the volume of waste that was generated by the five plaintiff companies at their facilities. Not that it got to the site, but that it was generated. He was sitting there in the stand waiting to testify. The night before this day that we're talking about now, Mr. Booth, the counsel then for Carpenter, was asked, who are you going to call tomorrow? He said, well, I might call Mr. Hochreiter, but not if we can enter into a stipulation. That's in the transcript. The next day we come in, and we have about three hours, two and a half hours of closed-room negotiations between myself and Mr. Booth, Carpenter's lawyer, about the next stipulation. That results in the stipulation that's in A6398 that Carpenter, Handy, and Harmon, and the plaintiffs joined in. All right? And before we even get to what that stipulation said, when I offered that stipulation and evidence, they didn't call Mr. Hochreiter. Why not? What did I say? I said, your honor, we've entered into a stipulation, meaning the next one, the second one, that is now with all the parties left in the case. The intent of the second stipulation was that Carpenter joined in the first stipulation. I understand that that's your assertion. And that's what it says. Well, that isn't what it says, is it? Well, yet it is. It says that they are adopting everything that's in the first stipulation? No, but it refers back to the waste from the plaintiff companies. Look, it says the waste from the plaintiff companies referenced in paragraph five of the other stipulation contains some Herculean, circular hazardous substances. How can that not possibly mean that they're agreeing with the volumes and the whole point of the first stipulation? I guess it can mean that because of just what they've said in their briefing, that you can stipulate that stuff has circular waste in it without stipulating to the amounts. Well, I... But be that as it may, I would like, if I could, to have you turn your attention to the last argument that your opponent made, which is there's no way there could be a 107A claim here. It's impossible because under 113, we were barred, absolutely barred, from having some contribution claim. Well, that's an interesting comment because if you read the opinion, which I'm sure you did, they had a 113 counterclaim. The judge notes they had a 113 counterclaim, and the judge flat says unmistakably, I'm deciding this case under 113F, and I'm equitable to be eloquent. He flat says that. This is a complete red herring. It really is. Let's get back to your question of how I can have a 107 claim because Atlantic Research specifically says, folks, the words are, any other person under 107 may bring a claim for 107. And Atlantic Research said, you know what, any other person means any other person in the whole world except for the United States, the state, or an Indian tribe. Exactly what Your Honor, Judge Sloverter said in the DuPont opinion. You noted that that was, any other person means any other person, period, full stop, no exceptions. And in Atlantic Research, the supposed exception was, oh, but any other person except for PRPs. The court said, there's no exceptions to any other person. They're now telling you, any other person means any other person unless they happen to have a 113 claim too. Well, that can't be true. There's no way that Justice Thomas would write an opinion and say, well, even though I said any other person means any other person without qualification, now I'm going to tell you that I was wrong, that any other person means any other person except persons that have 113 claims. You can't mean that. Why are we fighting over this? You say it's a red herring. It's a red herring. Explain why it's a red herring. It's a red herring because the only thing it has to do with is this burden of proof issue. Because, see, they concede that SPS, Ford, and SciTech, and TI on the second consent decree have 113 claims. And the judge decided the case under 113. So it's irrelevant. The only reason it's relevant is because of my argument that they're trying to argue that I had this super burden of proof under 113 that I don't have under 107. And Your Honor was correct when you were talking to Mr. Fox when you noted that under 107, I just have to prove that they're liable parties and that I incurred response costs. That's the end. I don't have to prove any allocation at all. That's what this whole argument is about. It has nothing to do with how the case ended up. It really doesn't. So any other person means any other person, period. And as Your Honor pointed out in talking to Mr. Fox, how can the Supreme Court possibly mean anything other than you might have a 107 claim, and you might have a 113 claim, and you might have both? We're going to decide it someday. But certainly, that can't possibly be read to mean, like he said, well, you can't do it. No opinion that I'm aware of ever said that only because you got sued, you can't have a 107 claim. It's completely contrary to what Atlantic Research stands for. And it's completely contrary to the DuPont opinion that Judge Slover wrote. Can, if I may, I'm interested in the piece of this case that has to do with money that was ordered that Carpenter pay in relation to the TI, and how do you say, is it a gear? A gear. A gear. A gear? A gear. A gear. There was, if I've got this right, TI was party to one of the OU's consent parties. They weren't a party to either one, Judge. Oh, was it a gear that was? Oh, did you say TI? I said TI. You were correct. I thought TI was a party to one. To the second one. Right. And a gear was a party to neither. Correct. But they, for reasons good and sufficient to themselves, get in and contribute monies. Correct. Okay. So they don't seem to, but they're not operating under the consent decree. At least TI isn't in one case, and a gear isn't in both cases. Correct? They're not liable under the consent decree. Right. So they're not in that nether region. They're voluntary. Yeah. If that's the case, then how can the monies that are being attributed to them be attributed, or how can they be, how can Carpenter be liable for those funds? Because they have claims under 107. Because they're classic 107A plaintiffs. They haven't been sued. How are they 107A plaintiffs if they're not incurring their own costs? Oh, they are. They paid the money. No, let's... Well, wait. Maybe I'm confused, but I thought incur the cost doesn't just mean you pay the money. It means you're doing the work. It's not you pay somebody else to do the work. Right. It's that you're in there doing the work, and you're incurring those costs directly, and because you're incurring those costs directly, that's what makes you 107A. Have I got it wrong? You've got it right, but the facts are different. They did pay the money directly. Here's the point. Here's what happened in this case. Anytime there's a PRP group, a group of companies that collectively are going to They hire the contractors who are actually going to do the work collectively. They put money into the accounts, and a check gets written from the account to pay the contractors. That's exactly what happened here, and it was stipulated too. All right. Each of my five clients put money into these various accounts that were trust accounts. And that's... And they pay the contractors from it. ...incurring costs. And that's directly incurring costs. All right. That's correct. Exactly correct. That's correct. One thing I want to clear up is one of the things that was said in the reply brief. A critical fact here is the EPA continued to do work at this site way after the date of the record of decision. That's on the statute of limitations. Yes, exactly. And I want to just clear this up real simply. They constructed a groundwater collection and treatment system in the 90s. That continued to operate up until the day we took it over in May of 2000. We'd have to say it was clearly erroneous then, right? What Judge Davis found? Because Judge Davis finds as a fact that November 1898 is the end date. Oh, I disagree with that completely. Well, that's what... No, no, he didn't say... He disagrees with that completely? Absolutely. He says, at the earliest, it was the date of the rod. And then in his footnote, he specifically says, in fact, it's more likely to be September of 2000. Yeah, no question. He does say that. Well, that's his finding of fact. Why is... He says, I'm selecting... In fact, I think that's the word he uses. That's the word he uses. I'm selecting November 18. So, if he's selecting that as the end date, why is that not... How is that not his finding of fact? Because if you read what he says, he says, I'm selecting it for the purpose of doing the statute of limitations analysis to give Carpenter every benefit of the doubt. Those may be his exact words. Okay. And even if I use that date... His point is, even if I use that earlier date, they lose anyway because it's still timely. That's what he said. I thought he meant that it really wasn't necessary to actually fix the date. Well, I think that's probably... He might have meant that too. But I'll be happy to talk about clearly erroneous. There's all kinds of evidence in the record that the EPA continued to operate and maintain that treatment plant up until May of 2000 when we took it over. First of all, he made that finding of fact on page eight of his finding of fact. Second, it was stipulated to. Stipulations number 31 and number 33 specifically say, we took over the operation and maintenance of that treatment plant in May 2000. Jeff Seibel, our project coordinator, testified that while we were negotiating with the United States on the first consent decree, trying to decide whether to take the plant over or not, try to make a deal, he went and observed the plant. He saw how it was being run by EPA. He figured out, you know, how much it was going to cost to do it. And he testifies that we then took over that plant in May of 2000. There's additionally a modification proposal that we made to EPA. We said, we want to change the plant. The modification proposal's in evidence. It's at A6782 to 85. And it specifically says, EPA was running that plant up until May 2000. Plus, you've got the cost report. EPA's cost report that was the basis for the dollar settlement was through June of 2000. And the second consent decree, we had to pay them $424,000 for work done that they just hadn't gotten around to recording after June. There's no doubt that EPA continued to do activity at this site. And there really can be no doubt that this treatment plant was a removal action that continued until at least May. And the judge says, his footnote. I got you. You got me. Okay, Mr. Harris. Thank you. Mr. Fox, you get rebuttal. I'm going to get the transfer. I want to go back to the burden of proof and the statement that it's a red herring. That is the central issue in this case. If they have a 113 action only, then they have the burden of proof. Mr. Harris just said, if I have a 107 action, I don't have the burden of proof on allocable shares. But they had a 113 action and have that burden of proof. Okay. Now, if that's true, then I want you to respond, please, to his argument, which is whether Carpenter is bound by it as a stipulation or not, it can and does constitute an admission. We put it in evidence. The judge chose to credit it. And he's within his power to do that. And therefore, it's evidence. And it was the foundation for decision. What's your response to that? That evidence is not admissible evidence against Carpenter because it is a hearsay statement. Carpenter did not adopt the statement. They're not a co-conspirator with the defendant. If you look at Rule 801. How's it hearsay if it's an admission? By definition, if it's an admission of a party opponent, it's not hearsay, right? And their assertion is, or at least this is what I hear them arguing, it's in the nature of an admission. Even if it's not binding them, it's in the nature of our saying, yeah, we did it. We did it to this amount. And he credits that admission. I do not believe, and we've cited cases that stipulations between two parties are admissible evidence against Carpenter. It may have been admissible against Handy and Harmon, the defendant who entered into it. It was not admissible against Carpenter. We've cited cases that deal with findings and consent decrees that are between two parties. And that is not admissible evidence against a party who's not a party to that consent decree. If you look at Federal Rule of Evidence 801, which is the exception to the hearsay rule for admissions of parties, it specifically says it's not admissible against other parties except when they're co-conspirators or a party adopts that statement. It is not admissible evidence against Carpenter in this case. And that was their burden of proof here. And if there's any doubt about that, you really need to look at the colloquy. This was expressly objected to by Carpenter. Carpenter said, that does not apply to us. This is the quote that plaintiff's counsel made in front of the court when Carpenter objected. Your Honor, we're not asking defendant Carpenter to stipulate to any of these facts. And then the court says, okay, so it's a stipulation with a limited scope which doesn't involve your client. It's not admissible against Carpenter. We're not saying that it can't be used against Handy and Harmon, but it can't be used against Carpenter. They have not met their burden of proof against Carpenter. One other point I wanted to make with respect to this red herring and the contribution protection provisions. It's not only a statutory bar, both of the consent decrees, both of the consent decrees have that language in there that says that Carpenter does not have the right to assert a contribution action in its counterclaim against the parties who entered into the consent decree. Both of them, and that's at the appendix A2190 to 91, and A2422 and 23. Isn't there something inequitable in the fact that Carpenter clearly contributed to the waste that have to be remedied? That the plaintiffs paid to remedy it, and that you say Carpenter should give away Scott. Isn't that just inequitable under the whole concept of CERCLA? There's no doubt that it's a harsh result that we're seeking. However, it's the correct result because the plaintiff still has to put on their case. They still have to meet their burden of proof. And they did not on a crucial issue, the volume of waste sent by all the parties to the site. Okay, what we're going to do, gentlemen, both of you, we're going to ask for a transcript of this argument. And I don't know if you've done that before in this court. No, okay. Well, I think in this case, we can ask that you share the cost of this. Sometimes we- It's a contribution. Contribution, not apportionment. But you go to the clerk's office, and you arrange to have a transcript made. And they know how to do it in the clerk's office. But what I would like you to do is before it comes to the court, I want you each to read that which you said to be sure that the stenographer has correctly set forth. You can't change what you said, but it's complicated. And the stenographer doesn't have CERCLA knowledge, so that I need certification from you all, I mean, you don't have to be certified, that it's accurate with respect to your own statements. Sure. Ask the clerk's office to do it in due course, and we all know what in due course means. Sure, thank you. Thank you for your time. We'll take it under advisement.